UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| SINDICATO PUERTORRIQUEÑO DE TRABAJADORES, ET. AL., <br><br> Plaintiffs, <br><br> v. <br><br> LUIS FORTUÑO BURSET, ET. AL., <br><br> Defendants. | CIV. NO. 12-1531 (PG) |

### CERTIFICATION TO THE PUERTO RICO SUPREME COURT

On July 1, 2012, the plaintiffs Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 ("SPT"), Unión General de Trabajadores de Puerto Rico, SEIU Local 1199 ("UGT"), Service Employees International Union ("SEIU") and Alianza SEIU de Puerto Rico, Inc. ("Alianza") (hereinafter collectively referred to as "Plaintiffs") brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants Luis Fortuño in his official capacity as Governor of the Commonwealth of Puerto Rico, the Public Service Appeals Commission ("PSAC"), Laudelino F. Mulero Clas in his official capacity as the President of PSAC, the Office of the Election Comptroller and Manuel A. Torres Nieves in his official capacity as the Election Comptroller (hereinafter collectively referred to as "Defendants"). See Docket No. 5. The Plaintiffs seek injunctive and declaratory relief because they allege that Section 4.7(c)(4) of the Puerto Rico Public Service Labor Relations Act, Law No. 45 of February 25, 1998, as amended by Law No. 96 of August 7, 2001 (hereinafter "Law 45"), and Sections 6.007 through 6.010 of the Puerto Rico Political Campaign Financing Oversight Act, Law No. 222 of November 18, 2011 (hereinafter "Law 222") are unconstitutional. According to the Plaintiffs, the statutes in question violate the First Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution "by unduly restricting the First Amendment rights of labor organizations to engage in political activity, and by failing to provide fair notice of the conduct that is prohibited." See Docket No. 5 at ¶ 1.

In their complaint, Plaintiffs allege that, although they do not currently make contributions and/or expenditures in support of candidates running for local office in Puerto Rico, they "intend, both directly and

CIV. NO. 12-1531 (PG)                                                    Page 2

through political action committees, to make independent expenditures ... and to make contributions to other entities that make such independent expenditures, in support of the election of candidates for local office in Puerto Rico, ... ." See Docket No. 5 at ¶¶ 15, 17. "Plaintiffs also intend to engage in activities in support of or opposition to certain referenda that will be submitted to voters." See Docket No. 5 at ¶ 17. The Plaintiffs complain, however, that Section 4.7(c) of Law 45 prohibits the type of contributions they intend to make with the funds of the labor organizations appearing herein in violation of the Supreme Court's ruling in Citizens United v. Federal Election Commission, 130 S.Ct. 876 (2010).[1]

The aforementioned statute provides, in relevant part, that the Public Service Labor Relations Commission ("the Commission") shall decertify a labor organization as an exclusive representative should it incur any of the following:

> (4) Contribute directly or indirectly with funds or property of a labor organization to the election or rejection of a political party or a candidate to public elective office. Funds or property, or resources of an exclusive representative shall not be used to support or reject institutions, political parties or candidates that support or defend options or positions in any electoral event. Referendums called regarding constitutional amendments that have a direct effect on those labor rights consecrated in the Bill of Rights of the Constitution of Puerto Rico, are excluded from this prohibition.

P.R. STAT. ANN. tit. 3, § 1451i(c)(4). The statute provides for substantial fines at the discretion of the Commission "after it has held an administrative hearing in which the labor organization is given the opportunity to contest the facts and introduce evidence in its favor." Id.

In their opposition to the Plaintiffs' claims, the Defendants assert in regard to the Plaintiffs' claims pertaining to Law 45 that their concern with Section 4.7(c)(4) of Law 45 is unwarranted inasmuch as it is the Defendants' position that Section 4.7(c)(4) of Law 45 "was overridden by ... Law No. 222 and

---

[1] In Citizens United, plaintiff Citizens United, a nonprofit corporation, brought action against Federal Election Commission (FEC) seeking declaratory and injunctive relief, asserting that it feared it could be subject to civil and criminal penalties for violating § 203 of the Bipartisan Campaign Reform Act of 2002 (BCRA), 2 U.S.C. § 441b (Section 441b), if it made a film critical of then-Senator Hillary Clinton, a candidate for her party's Presidential nomination, available through video-on-demand within 30 days of the primary elections. In relevant part, the Supreme Court held that the government may not, under the First Amendment, suppress political speech on the basis of the speaker's corporate identity, and that Section 441b, which barred independent corporate expenditures for electioneering communications, violated the First Amendment. See Citizens United, 130 S.Ct. at 913.

CIV. NO. 12-1531 (PG)                                                    Page 3

labor unions are allowed to use their own funds to make independent contributions in favor of candidates, political parties and ideologies so long as such contributions are not coordinated, as defined in Law No. 222." See Docket No. 48 at page 16. To the extent, then, that the statute in question, namely, Section 4.7(c)(4) of Law 45 was rescinded by Law 222, there is thus no case or controversy regarding the constitutionality of this statute.

Now, the Plaintiffs also seek that the Defendants be enjoined from implementing Sections 6.007 through 6.010 of Law 222, and that the statute be declared unconstitutional as applied to the Plaintiffs because it violates their rights under the First and Fourteenth Amendments. According to the Plaintiffs, these sections of the law place unconstitutional restrictions on the unions' First Amendment rights to engage in electoral speech and spending. In addition, the Plaintiffs assert that Law 222 subjects them, as well as their officers and representatives, to fines and, potentially, criminal prosecution without providing a fair warning of the conduct that is prohibited. See Docket No. 1 at ¶ 48. It is the Plaintiffs' contention that "[k]ey provisions of the Law … are so vague that reasonable persons, including Plaintiffs, cannot know what they must do to be in compliance with these provisions." Id.

Section 6.007 of Law No. 222 provides:

> No juridical person shall make contributions out its own resources in or outside Puerto Rico to any political party, aspirant, candidate, campaign committee, or to any authorized agent, representative, or committee thereof, or to political action committees that make contributions or coordinate expenditures among them. However, it may establish, organize, and administer a committee, to be known as a segregated committee or fund that, for the purposes of contributions and expenditures, shall be treated as a public action committee that must be registered in the Office of the Election Comptroller, render reports, and comply with all requirements imposed under this Act. Thus, its members, employees, and their immediate family or related persons may make contributions that shall be deposited in the account established and registered in the Office of the Election Comptroller. In order for a juridical person to be able to establish a segregated committee or fund for these purposes, it must comply with the limitations and requirements set forth in Section 6.010 of this Chapter. The committee, organization, or citizen group may make donations from said account to political parties, aspirants, candidates, and campaign committees and authorized

> committees, as well as to political action committees making contributions to any of them.

P.R. STAT. ANN. tit. 16, § 625g. Section 6.009 of Law 222, titled "Independent Expenditures," states as follows:

> Nothing in this Act shall limit contributions of money or anything of value made for election-related purposes to natural persons, juridical persons, or political action committees that do not contribute or incur coordinated expenditures with political parties, aspirants, candidates, campaign committees, or authorized committees, or with any authorized agent and representative thereof. However, in these cases, the provisions of Section 6.001 of this Act shall apply. To make contributions or incur in this type of expenditures, a juridical person must obtain the authorization of the majority vote of its members, as provided in Section 6.010 of this Act.

P.R. STAT. ANN. tit. 16, § 625i. Section 6.010 of Law 222 provides, in relevant part, that to obtain the authorization mentioned in Sections 6.007 and 6.009 of Law 222:

> 1. The juridical person must hold a membership meeting. The call for such meeting shall be issued fifteen (15) days before the holding thereof and shall only include this authorization purpose.
>
> 2. At the meeting, the majority plus one of the total members of the entity, whether a corporation, cooperative, partnership, association, or labor organization, shall approve by direct and secret vote the use of the money or property of the entity for election-related purposes. Under no circumstances shall a vote that has not been cast be counted as a vote in favor of the use of money or the property for election-related purposes.
>
> 3. For such authorization, the members shall be informed of the purposes of the electioneering communication or communications that shall be paid for, including the specific purpose of the messages to be transmitted and the amount of money that shall be earmarked to such campaign. Before voting at the meeting, the members shall be clearly informed of whether they, as an organization, intend to support, oppose, or advocate for the election or defeat or a political party, ideology, aspirant, or candidate. No organizational structures shall be created to evade the requirement of obtaining the informed consent of the members of any juridical person.

P.R. STAT. ANN. tit. 16, § 625j.

Firstly, the Plaintiffs complain that the term "ideology," as the term is used in the act, and the definition of "independent expenditure" contained

CIV. NO. 12-1531 (PG)                                                    Page 5

in Section 6.009 are unconstitutionally vague. See Docket No. 5 at ¶¶ 31, 40. Second, the Plaintiffs assert that the membership meeting that the statute in question requires be held is so extraordinarily burdensome as to render the ability to make independent expenditures impossible. See Docket No. 5 at ¶ 35. Third, the Plaintiffs contend that the requirements set forth in Section 6.010 are also unconstitutionally vague should the contributions and expenditures a labor organization wishes to make change over the course of an election process. See Docket No. 5 at ¶¶ 37-39. Finally, the Plaintiffs allege that the procedures that the statute in question establishes in order for a labor organization to be able to make the election-related expenditures it wishes to make are vague and confusing and should be thus left without effect. See Docket No. 5 at ¶ 41.

Additionally, on July 24, 2012, the Plaintiffs filed a supplemental memorandum in support of its motion for preliminary injunction (Docket No. 20), which refers to amendments made to Law 222 by the recently enacted Law No. 135 of July 3, 2012 ("Law 135"). It is the Plaintiffs' contention in this motion that the amendments sought in Law 135 make the statute vague by failing to adequately state what is required in order for a juridical person – the Plaintiff Unions in particular – to be permitted to make independent expenditures. See Docket No. 20 at page 4. Specifically, the Plaintiffs complain that it is unclear from the statute whether or not all independent expenditures a juridical person wishes to make must be made through a committee that is regulated as a PAC. See id. at page 5.

The present action requires the court to analyze whether the statutes in question violate the Plaintiffs' freedom of speech and due process rights. These rights are deeply entrenched in both the United States Constitution, as well as the Puerto Rico Constitution. See U.S. CONST. Amend. I; U.S. CONST. Amend. I, § 1; P.R. CONST. Art. II, §§ 4, 7. The right to due process of law and the right to freedom of expression are considered fundamental rights under the Puerto Rico Constitution. See Dominguez Castro v. E.L.A., 178 D.P.R. 1, 35, 73 (2010). These provisions protect the ability of the plaintiff unions appearing herein to freely express their political beliefs, as well as their right to not be deprived of this freedom without due process of law. See P.R. CONST. Art. II, §§ 4, 7. Notwithstanding, "[t]he right to free expression is not unrestricted. It may be conditioned when compelling public interests so require." Pueblo v. Santos Vega, 15 P.R. Offic. Trans. 1083 (1984) (citing Aponte Martínez v. Lugo, 100 P.R.R. 281, 288 (1971); Mari Bras v. Casañas, 96

CIV. NO. 12-1531 (PG)

CIV. NO. 12-1531 (PG)   Page 6

P.R.R. 15, 20 (1968)). Moreover, it is clear that the Legislature has the faculty bestowed by the Constitution of the Commonwealth of Puerto Rico to regulate electoral processes. See P.R.P. v. E.L.A., 15 P.R. Offic. Trans. 828 (1984).

In light of the Plaintiffs' allegations in this case, this court finds itself in the position of being asked to resolve an important issue of state law, that to date has been unanswered by the state courts. The public policy implications involved in answering this question will have serious and wide-spread ramifications on the law, and thus, the court believes, based on the principles of federalism and comity between the federal and state courts, that the most respectful course of action is to certify the question presented to the Honorable Justices of the Puerto Rico Supreme Court. In doing so, the court is cognizant that federalism requires the court to attempt to resolve the controversy without invalidating local laws if at all possible. See Bond v. United States, 131 S.Ct. 2355, 2364 (2011) (discussing how the concept of federalism gives the states the right and ability to be responsive to the needs of the local citizenry by allowing the states to provide additional rights to the individual, while at the same time protecting individuals' rights from impermissible state action). In fact, the Supreme Court has held that the certification procedure, in contrast to a *Pullman* abstention,[2] "allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response." Arizonans for Official English v. Arizona, 520 U.S. 43, 76 (1997). Because the local laws in question have yet to be discussed by the Puerto Rico Supreme Court, it is with great deference that this court certifies the following questions to the able Justices of the Supreme Court of Puerto Rico:

1. Whether the conditions imposed in Sections 6.007 through 6.010 of Law 222 on labor organizations are unconstitutionally burdensome as applied to Plaintiffs in violation of the Plaintiffs right to freedom of expression?

2. Whether the terminology complained of in Law 222 is unconstitutionally vague in violation of Plaintiffs' right to not be deprived of its freedom of expression without due process of law?

---

[2] See Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941).

CIV. NO. 12-1531 (PG)                                                              Page 7

Resolution of the above issue under Commonwealth law may dispose of the federal constitutional controversy in this case should the Puerto Rico Supreme Court find that the statutes in question are unconstitutional.

As per the foregoing, and pursuant to Rule 25 of the Rules of the Supreme Court of Puerto Rico, P.R. LAWS ANN. tit. 4, app. XXI-A, R. 25, the Clerk of Court shall transmit this certification to the Clerk of the Commonwealth Supreme Court, as well as an appendix that includes a certified copy of all pleadings, motions and orders filed and entered in this case.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 7, 2012.

JUAN M. PEREZ-GIMENEZ
SENIOR U.S. DISTRICT JUDGE