**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| SINDICATO PUERTORRIQUEÑO DE TRABAJADORES, ET. AL., <br><br> Plaintiffs, <br><br> v. <br><br> LUIS FORTUÑO BURSET, ET. AL., <br><br> Defendants. | CIVIL NO. 12-1531 (PG) |

**OPINION & ORDER**

    The Plaintiffs Sindicato Puertorriqueño de Trabajadores, SEIU Local 1996 ("SPT"), Unión General de Trabajadores de Puerto Rico, SEIU Local 1199 ("UGT"), Service Employees International Union ("SEIU") and Alianza SEIU de Puerto Rico, Inc. ("Alianza") (hereinafter collectively referred to as "Plaintiffs") brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against defendants Luis Fortuño in his official capacity as Governor of the Commonwealth of Puerto Rico, the Public Service Appeals Commission ("PSAC"), Laudelino F. Mulero Clas in his official capacity as the President of PSAC, the Office of the Election Comptroller and Manuel A. Torres Nieves in his official capacity as the Election Comptroller (hereinafter collectively referred to as "Defendants"). See Docket No. 5.

    The Plaintiffs seek injunctive and declaratory relief because they allege that Section 4.7(c)(4) of the Puerto Rico Public Service Labor Relations Act, Law No. 45 of February 25, 1998, as amended by Law No. 96 of August 7, 2001 (hereinafter "Law 45"), and Sections 6.007 through 6.010 of the Puerto Rico Political Campaign Financing Oversight Act, Law No. 222 of November 18, 2011 (hereinafter "Law 222") are unconstitutional. The Plaintiffs commenced this action on July 1, 2012, that is, approximately thirteen years after the enactment of Law 45 and seven and a half months after the passage of Law 222.

    According to the Plaintiffs, the statutes in question violate the First Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution "by unduly restricting the First Amendment

Civ. No. 12-1531 (PG)                                                   Page 2

rights of labor organizations to engage in political activity, and by failing to provide fair notice of the conduct that is prohibited." <u>See</u> Docket No. 5 at ¶ 1.

Specifically, Plaintiffs wish to make independent expenditures to "further the policies set out" in a document called "Propuestas para un Mejor País" (Proposals for a Better Country).[1] The document describes SPT and UGT's proposals to improve the lives of their members and their families as well as the welfare of Puerto Rico through the topics of education, health and welfare, labor rights, sustainable development, democracy and citizen participation, and human rights. <u>See</u>, Diaz Decl., Docket No. 10-2 at ¶9; Caraballo Decl., Docket No. 10-3 at ¶9. The document was adopted during an assembly called by Alianza on November 19, 2011 by vote of the delegates of the Council of Delegates of UGT and the General Assembly of Delegates of SPT.

In their complaint, Plaintiffs allege that, although they do not currently make contributions and/or expenditures in support of candidates running for local office in Puerto Rico, they "intend, both directly and through political action committees, to make independent expenditures … and to make contributions to other entities that make such independent expenditures, in support of the election of candidates for local office in Puerto Rico, … ." See Docket No. 5 at ¶¶ 15, 17. "Plaintiffs also intend to engage in activities in support of or opposition to certain referenda that will be submitted to voters."[2] See Docket No. 5 at ¶ 17.

The Plaintiffs complain, however, that Section 4.7(c) of Law 45 prohibits the type of contributions they intend to make with the funds of the labor organizations appearing herein in violation of the Supreme Court's ruling in Citizens United v. Federal Election Commission, 130 S.Ct. 876(2010).[3]

---

[1] Despite the fact that Plaintiffs have made repeated references to this document in their briefs before the Court, they have not provided a copy of the same duly translated to the English language for the Court's review.

[2] Inasmuch as the referenda in question was held on August 19, 2012, the Plaintiffs' claims in connection therewith are moot.

[3] In <u>Citizens United</u>, plaintiff Citizens United, a nonprofit corporation, brought action against Federal Election Commission (FEC) seeking declaratory and injunctive relief, asserting that it feared it could be subject to civil and criminal penalties for violating § 203 of the Bipartisan Campaign Reform Act of 2002 (BCRA), 2 U.S.C. § 441b (Section 441b), if it made a film critical of then-Senator Hillary Clinton, a candidate for her party's Presidential nomination, available through video-on-demand within 30 days of the primary elections. In

Civ. No. 12-1531 (PG)                                                    Page 3

The aforementioned statute provides, in relevant part, that the Public Service Labor Relations Commission ("the Commission") shall decertify a labor organization as an exclusive representative should it incur any of the following:

> (4) Contribute directly or indirectly with funds or property of a labor organization to the election or rejection of a political party or a candidate to public elective office. Funds or property, or resources of an exclusive representative shall not be used to support or reject institutions, political parties or candidates that support or defend options or positions in any electoral event. Referendums called regarding constitutional amendments that have a direct effect on those labor rights consecrated in the Bill of Rights of the Constitution of Puerto Rico, are excluded from this prohibition.

P.R. STAT. ANN. tit. 3, § 1451i(c)(4). The statute provides for substantial fines at the discretion of the Commission "after it has held an administrative hearing in which the labor organization is given the opportunity to contest the facts and introduce evidence in its favor." Id.

In their opposition, the Defendants assert in regard to the Plaintiffs' claims pertaining to Law 45 that their concern with Section 4.7(c)(4) of Law 45 is unwarranted inasmuch as it is the Defendants' position that Section 4.7(c)(4) of Law 45 "was overridden by … Law No. 222 and labor unions are allowed to use their own funds to make independent contributions in favor of candidates, political parties and ideologies so long as such contributions are not coordinated, as defined in Law No. 222." See Docket No. 48 at page 16. To the extent, then, that the statute in question, namely, Section 4.7(c)(4) of Law 45 was rescinded by Law 222, there is thus no case or controversy regarding the constitutionality of this statute.

Now, the Plaintiffs also seek that the Defendants be enjoined from implementing Sections 6.007 through 6.010 of Law 222, and that the statute be declared unconstitutional as applied to the Plaintiffs because it violates their rights under the First and Fourteenth Amendments. According to the Plaintiffs, these sections of the law place unconstitutional restrictions on the unions' First Amendment rights to engage in electoral speech and spending. In addition, the Plaintiffs assert that Law 222 subjects them, as well as

---

relevant part, the Supreme Court held that the government may not, under the First Amendment, suppress political speech on the basis of the speaker's corporate identity, and that Section 441b, which barred independent corporate expenditures for electioneering communications, violated the First Amendment. See Citizens United, 130 S.Ct. at 913.

Civ. No. 12-1531 (PG)                                                    Page 4

their officers and representatives, to fines and, potentially, criminal prosecution without providing a fair warning of the conduct that is prohibited. See Docket No. 1 at ¶ 48. It is the Plaintiffs' contention that "[k]ey provisions of the Law … are so vague that reasonable persons, including Plaintiffs, cannot know what they must do to be in compliance with these provisions." Id.

Section 6.007 of Law No. 222 provides:

> No juridical person shall make contributions out its own resources in or outside Puerto Rico to any political party, aspirant, candidate, campaign committee, or to any authorized agent, representative, or committee thereof, or to political action committees that make contributions or coordinate expenditures among them. However, it may establish, organize, and administer a committee, to be known as a segregated committee or fund that, for the purposes of contributions and expenditures, shall be treated as a public action committee that must be registered in the Office of the Election Comptroller, render reports, and comply with all requirements imposed under this Act. Thus, its members, employees, and their immediate family or related persons may make contributions that shall be deposited in the account established and registered in the Office of the Election Comptroller. In order for a juridical person to be able to establish a segregated committee or fund for these purposes, it must comply with the limitations and requirements set forth in Section 6.010 of this Chapter. The committee, organization, or citizen group may make donations from said account to political parties, aspirants, candidates, and campaign committees and authorized committees, as well as to political action committees making contributions to any of them.

P.R. STAT. ANN. tit. 16, § 625g. Section 6.009 of Law 222, titled "Independent Expenditures," states as follows:

> Nothing in this Act shall limit contributions of money or anything of value made for election-related purposes to natural persons, juridical persons, or political action committees that do not contribute or incur coordinated expenditures with political parties, aspirants, candidates, campaign committees, or authorized committees, or with any authorized agent and representative thereof. However, in these cases, the provisions of Section 6.001 of this Act shall apply. To make contributions or incur in this type of expenditures, a juridical person must obtain the authorization of the majority vote of its members, as provided in Section 6.010 of this Act.

P.R. STAT. ANN. tit. 16, § 625i. Section 6.010 of Law 222 provides, in relevant part, that to obtain the authorization mentioned in Sections 6.007 and 6.009

of Law 222:

> 1. The juridical person must hold a membership meeting. The call for such meeting shall be issued fifteen (15) days before the holding thereof and shall only include this authorization purpose.
>
> 2. At the meeting, the majority plus one of the total members of the entity, whether a corporation, cooperative, partnership, association, or labor organization, shall approve by direct and secret vote the use of the money or property of the entity for election-related purposes. Under no circumstances shall a vote that has not been cast be counted as a vote in favor of the use of money or the property for election-related purposes.
>
> 3. For such authorization, the members shall be informed of the purposes of the electioneering communication or communications that shall be paid for, including the specific purpose of the messages to be transmitted and the amount of money that shall be earmarked to such campaign. Before voting at the meeting, the members shall be clearly informed of whether they, as an organization, intend to support, oppose, or advocate for the election or defeat or a political party, ideology, aspirant, or candidate. No organizational structures shall be created to evade the requirement of obtaining the informed consent of the members of any juridical person.

P.R. STAT. ANN. tit. 16, § 625j.

## I. PROCEDURAL BACKGROUND

As stated in the foregoing section, the Plaintiffs commenced this action on July 1, 2012, that is, approximately thirteen years after the enactment of Law 45 and seven and a half months after the passage of Law 222.

On July 17, 2012, Plaintiffs filed a Request for Preliminary Injunction seeking to enjoin Defendants from implementing the challenged statutory provisions as applied to the Plaintiffs in the current election cycle. See Docket No. 10. On July 24, 2012, the Plaintiffs filed a Supplemental Memorandum in Support of Motion for Preliminary Injunction. See Docket No. 20.

On September 7, 2012, the Court certified certain questions of law to the Supreme Court of Puerto Rico. See Docket No. 56. The Plaintiffs sought appellate review of the Certification as an effective denial of their motion for preliminary injunction. See Docket No. 60.

By judgment entered on September 17, 2012, the First Circuit vacated

Civ. No. 12-1531 (PG)                                                Page 6

the Court's certification and ordered the Court to promptly rule on Plaintiffs' motion for preliminary injunctive relief. Accordingly, the Court set a Preliminary Injunction hearing on even date. See Docket No. 64.

On September 19, 2012, Defendants filed a Motion to Set Aside Hearing. See Docket No. 70. The Court granted the Motion and vacated the hearing set for September 20, 2012. See Docket No. 71.

Thereafter, the Plaintiffs filed a Motion for Reconsideration of the decision to vacate the hearing. See Docket No. 72. The Court granted the Motion for Reconsideration and set an evidentiary hearing for September 25, 2012 at 1:30 p.m. See Docket No. 75.

## II. PRELIMINARY INJUNCTION STANDARD

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (citing WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE, CIVIL 2d § 2948) (emphasis ours). The determination of whether this burden has been met rests within the realm of the court's discretion. See Deckert v. Independence Shares Corp., 311 U.S. 282, 290 (1940); Anheuser-Busch, Inc. v. Teamsters Local No. 633, Nat. Conference of Brewery & Soft Drink Workers, 511 F.2d 1097, 1099 (1st Cir.1975) (citations omitted), cert. denied, 423 U.S. 875 (1975).

The standard for issuing a preliminary injunction is oft-quoted a four factor test: (1) the likelihood of success on the merits; (2) the potential for irreparable injury; (3) a balancing of the relevant equities most importantly, the hardship to the nonmovant if the relief issues as contrasted with the hardship to the movant if relief is withheld; (4) the effect on the public interest of a grant or denial of the relief. See New Comm. Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 8-9 (1st Cir.2002); Ross-Simons of Wardwick, Inc. V. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir.1996); Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir.1991). "Of these four factors, the probability-of-success component [is] … critical in determining the propriety of injunctive relief." Lancor v. Lebanon Housing Authority, 760 F.2d 361, 362 (1st Cir.1985). The overseeing appellate court has called the likelihood of success factor the "sine qua non" of the preliminary injunction test.  See Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir.1993); see also SEC v. Fife, 311 F.3d 1, 8 (1st Cir.2002).

In addition, the potential for irreparable injury criteria "must not

be assumed, it must be demonstrated … speculation injury does not constitute a showing of irreparable harm." Narragansett Indian Tribe v. Guilbert, 934 F.2d at 6-7 (internal citations omitted). The comparable hardship factor requires the court to examine, and perform a comparison between the injuries suffered by plaintiff outweighing any harm which granting injunctive relief would inflict on the defendant. See DeNovellis v. Shalala, 135 F.3d 58, 77 (1st Cir.1998); Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir.1981). The final and fourth criterion, namely, the effect on the public interest, is measured by whether the public interest would be better served by issuing than by denying the injunction. See Massachusetts Coalition of Citizens with Disabilities, et al., v. Civil Defense Agency and Office Emergency Preparedness, 649 F.2d 71, 74 (1st Cir. 1981.)

### III. ANALYSIS OF PRELIMINARY INJUNCTION FACTORS

#### A. Likelihood of Success on the Merits

The Plaintiffs must first show a substantial likelihood they will prevail on the merits. That is, Plaintiffs must demonstrate a substantial likelihood that the challenged provisions are unconstitutional.

It is the Plaintiffs' contention that the challenged provisions are subject to strict scrutiny because they constitute a restraint on their right to engage in political speech. See Docket No. 10-1 at page 10.

Generally speaking, "[l]aws that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." Citizens United v. Federal Election Comm'n, 130 S.Ct. 876, 898, 175 L.Ed.2d 753 (2010). However, the Supreme Court has distinguished laws that simply require disclosure of information by those engaging in political speech. Doe v. Reed, 130 S. Ct. 2811, 177 L.Ed.2d 493 (2010.) In Citizens United, the Court made clear that "Disclaimer and disclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign related activities', and do not 'prevent anyone from speaking.'" Citizens United, 130 S.Ct. at page 885 (citing Buckley, 424 U.S. at page 64; McConnell v. FEC, 540 U.S. 93, 201, 124 S.Ct.619, 157 L.Ed.2d 491(2003.))

As such, challenges to disclosure requirements in the electoral context are subjected to what the Court has termed "exacting scrutiny." Exacting scrutiny, a less stringent standard than strict scrutiny, "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." Citizens United, 130 S.Ct. at 914, (citing

Civ. No. 12-1531 (PG)                                                    Page 8

Buckley v. Valeo, 424 U.S. 1, 64, 66, 96 S.Ct. 612. 46 L.Ed.2d 659 (1976.))

The Plaintiffs contend that the provisions of Law 222 that are at the heart of this case "have nothing to do with preventing corruption or the appearance of corruption," which is necessary to satisfy the exacting scrutiny. See Docket No. 10-1 at page 10. In making such an assertion, the Plaintiffs overlook the Statement of Motives of Law 222, that specifically provides, in pertinent part, as follows:

> Citizens are particularly interested in knowing who makes contributions to political campaigns, and the State has a compelling interest in ensuring that freedom of expression shall be properly recognized, respected, channeled, and protected. Thus, this shall enable us to better identify and prevent corrupt and unlawful actions, which at times have beleaguered our election system, and to make informed decisions for the benefit of present and future generations. This legislation shall impart the transparency on the voting system of Puerto Rico that it demands. It is necessary for the voting system of Puerto Rico to be equipped with the appropriate guidelines and requirements to ensure that the People know who provides funding for campaign activities and advertisements that deliver statements intended to sway their opinion.

The Plaintiffs challenge several statutory provisions of Law 45 and Law 222 that apply to alleged restrictions on independent expenditures, contributions and disclosure and disclaimer requirements. Each provision must be examined independently and that analysis necessarily commands a determination on the appropriate scrutiny. To conclude, as the Plaintiffs do, that strict scrutiny applies to each and every statutory provision challenged in this case is premature.

At this stage of the proceedings and with an incomplete record, the Court is not in a position to assess the complex issues raised by the challenges Plaintiffs pose to Puerto Rico's electoral laws. In order to engage in the in-depth analysis required to determine whether the Plaintiffs are likely to succeed on the merits, the Court must have before it a full record. Because the remaining three factors for issuance of a preliminary injunction weigh in favor of denying Plaintiffs' request at this stage of the proceedings, the Court will refrain from entertaining a discussion on the Plaintiffs' likelihood of success on the merits.

***B. Irreparable Injury***

The Plaintiffs' claims of irreparable injury rest solely on the loss of their First Amendment rights to participate in activities and make independent expenditures in connection with the upcoming November elections.

However, "[T]he fact that Plaintiffs are asserting First Amendments rights does not automatically require a finding of irreparable injury." Pub. Serv. Co. of New Hampshire v. Town of West Newbury, 835 F.2d 380, 3 82 (1st Cir.1987) (quoting Rushia v. Town of Ashburnham, 701 F.2d 7, 10 (1st Cir. 1983) (internal quotations omitted); Respect Me. PAC v. McKee, 622 F.3d 13, 15 (1st Cir. 2010.)

Plaintiffs argue that Rushia is distinguishable from the case at hand because their claim of irreparable harm is not a "naked assertion," and point to Cirelli v. Town of Johnston Sch. Dist., 888 F.Supp. 13, 16 (D.R.I. 1995) and Hohe v. Casey, 868 F.2d 69, 72-73 (3rd Cir. 1989) for the proposition that a plaintiff must show "a chilling effect on free expression." See Docket No. 50-1 at page 10.

In Cirelli, the First Circuit ruled that the Plaintiff had fulfilled the irreparable injury requirement by showing that her First Amendment rights "have very likely been violated." Cirelli, 888 F.Supp. at 16. In reaching such a determination, the District Court relied on case law from the Supreme Court and the First Circuit supporting plaintiffs' intention to comment on existing conditions of a high school that violated the Rhode Island Health and Safety Code, and noted:

> I am hard pressed to imagine what function of the school would be impaired by public exposure of the existing safety violations at the school, where the function of the school presumably includes the commitment to provide a safe environment.

Id.

Unlike the Cirelli plaintiff, the Plaintiffs in this case have not made such a clear showing of immediate injury that warrants issuance of a preliminary injunction. This determination does not represent an adjudication of the merits of the Plaintiffs' First Amendment claims, but responds to the evidence that the Plaintiffs have placed before the Court up to this point in the proceedings in order to obtain injunctive relief.

The Plaintiffs have not presented this Court with evidence of "specific plans to make expenditures" to support candidates or political parties or ideologies in furtherance of the Propuestas. See Respect Maine Pac, 622 F.3d at page 16 (Plaintiff "has shown no immediate injury, as it has not produced evidence that it has spent any sums nor has it alleged specific plans to make expenditures likely to trigger matching funds.") In fact, the Plaintiffs have

Civ. No. 12-1531 (PG)                                                    Page 10

not provided the Court with a copy of the Propuestas, despite relying on such document as the basis for their intention to make independent expenditures. See Diaz Decl., Docket No. 10-2 at ¶10 and Caraballo Decl., Docket No. 10-3 at ¶10. The Plaintiffs even failed to identify which candidate's platform would support their goals as labor organizations or how the Propuestas would be best served by engaging in independent expenditures and contributions.[4] It was the Plaintiffs' burden to produce such evidence and they had ample opportunity to do so at the September 25, 2012 evidentiary hearing. Nonetheless, they failed to meet their burden.

In the context of an ongoing election, Courts have found that the "extraordinary balance of the harms" requires a finding that plaintiffs are not entitled to a preliminary injunction despite showing a "very strong likelihood of success on the merits." McComish v. Brewer, 2008 WL 4629337 (D.Ariz. Oct. 17, 2008.)

The Plaintiffs' affirmations of immediate injury are further undermined by their unwarranted delay in filing this action. It is undisputable that the Plaintiffs waited until the eleventh hour to seek remedy against two statutes that had been enacted long before this lawsuit was filed. Moreover, according to the Plaintiffs' own admissions, at the November 19, 2011 assembly called by Alianza, SPT's General Assembly of Delegates and UGT's Council of Delegates deliberated and voted to adopt the Propuestas. See Diaz Decl., Docket No. 10-2 at ¶¶ 9-13, 16, Caraballo Decl., Docket 10-3 at ¶ 17. During the September 25 hearing, Roberto Pagán Rodríguez, President of the SPT and Vice-President of SEIU, acknowledged that the Propuestas had been in discussion for at least a decade.

Pursuant to the Declaration of Bienvenido Caraballo, Secretary Treasurer of UGT, in February of 2012, the Board of Directors of UGT "voted to conduct a public campaign with regard to the August referendum and the November general elections, and as part of that campaign to make polical expenditures in a total specified amount." See Caraballo Decl., Docket 10-3 at ¶ 13. On March 30, 2012, UGT's Council of Delegates "ratified the need to engage in such public campaign and to make political contributions and expenditures" in support of those candidates for the November general

---

[4] In contrast, the Plaintiffs in Citizen United, had already released the documentary that was the subject of the controversy and had even made specific plans to make it available on cable television by producing television ads for the documentary. Citizens United, 130 S.Ct. at page 881.

Civ. No. 12-1531 (PG)                                                    Page 11

elections who endorse the Propuestas. See Caraballo Decl., Docket No. 10-3 at ¶ 13. Furthermore, SPT's Consultative Board approved a Resolution on June 15, 2012, expressing that had it not been for Law Nos. 45 and 222, they would have conducted public campaigns for candidates who support the Propuestas. See Diaz Decl., Docket No. 10-2, at ¶ 13.

However, despite having discussed and ratified their intention to actively participate in political activities to advance their Propuestas, Plaintiffs waited until July 1, 2012 to file this action, a mere month away from the August referendum and just four months from the November general elections.

This unreasonable procrastination in the exercise of their rights, for which the Plaintiffs proffered no plausible explanation during the evidentiary hearing, stands inapposite to the immediacy of the injury they claim. In Respect Maine Pac, the First Circuit denied granting the Plaintiffs an emergency injunction enjoining Maine's election laws in part because of the untimeliness of the suit, stating:

> In determining the weight to be accorded to the appellant's claims, we also note that this "emergency" is largely one of their own making. The appellants, well aware of the requirements of the election laws, chose not to bring this suit until August 5, 2010, shortly before the November 2 elections...

Respect Maine Pac, 622 F.3d at page 16.

Similarly, in Justice v. Hosemann, 829 F.Supp.2d 504 (D.C. Miss. 2011), the Court accorded significant weight to the lateness of the Plaintiffs' motion for preliminary injunction, filed nineteen days before the Mississippi elections and noted: "It is well established that in election-related matters, extreme diligence and promptness are required." Justice, 829 F.Supp.2d at 520 (citing McClafferty v. Portage County Bd. Of Elections, 661 F.Supp.2d 826, 839 (N.D.Ohio 2009); Cf. Reynolds v. Sims, 377 U.S. 533, 585, 84 S.Ct. 1362, 12 L. Ed. 2d 506 (1964) ("under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case."))

Further, "precedent shows that such a delay indicates 'an absence of the kind of irreparable harm required to support a preliminary injunction.'" 2008 U.S. Dist. LEXIS 83307 *35 (D.Ariz. October 17, 2008) (citing Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2nd Cir.1985)).

Plaintiffs claim that there has been no unreasonable delay on their part and rely on the Declaration of Ivan Diaz, Secretary Treasurer of SPT, stating

that it was not until June 15, 2012 that SPT voted to make expenditures in connection with the 2012 election. See, Diaz Decl., Docket No. 10-2 at ¶ 13. Yet, when taking into consideration that the Propuestas had been under discussion for at least a decade; that the Plaintiffs approved them on November 19, 2011 and that, at least the UGT, had voted to conduct direct activities to promote the Propuestas in the upcoming elections since February of 2012, the only plausible conclusion is that Plaintiffs did not act diligently in bringing this action.

Furthermore, Plaintiffs failed to put forth a convincing explanation as to why they did not follow the procedure provided by Section 3.003(e) of Law 222 prior to filing the present action. Section 3.003(e) provides as follows:

> The Election Comptroller shall have following powers, duties and functions:
>
> (e) To issue administrative orders and opinions to comply with this or any other authority granted under this Act or the regulations adopted thereunder. The Election Comptroller may issue opinions or circular letters at the request of any party or *motu proprio* when he/she deems it necessary;

Had Plaintiffs requested an opinion from the Election Comptroller as to the application and scope of some of the challenged statutes in due time, perhaps their questions could have been addressed without the need to bring this lawsuit.

In light of these factors, the Court finds that the Plaintiffs did not meet their burden of establishing irreparable injury.

### *C. Balance of Harms and Public Interest*

"When resolving preliminary injunction motions, "[a]ny potential harm caused to [a plaintiff] by the denial of its motion must be balanced against any reciprocal harm caused to [the defendant] by the imposition of an injunction."" Avaya, Inc. v. Ali, No. 12-10660-DJC, 2012 WL 2888474, at *8 (D.Mass. July 13, 2012) (citing Touchpoint Solutions, Inc. v. Eastman Kodak Co., 345 F.Supp.2d 23, 32 (D.Mass.2004). Moreover, a preliminary injunction is not appropriate unless there is "a fit (or lack of friction) between the injunction and the public interest." Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir.2003). Here, the court finds that both factors tip in the defendants' favor.

Firstly, Law No. 222, among other things, imposes certain disclosure and reporting requirements regarding political expenditures on corporations and other judicial entities. The aforementioned Statement of Motives of Law No. 222 makes reference to the Commonwealth's informational interest.

In addition, Section 2.001 of Law No. 222 establishes, in relevant part, that the entities and instruments created by the statute are necessary to ensure and guarantee citizens an election process that is based on procedures that allow the flow of information to voters. Moreover, the Statement of Motives of Law No. 35 sets forth that with Law No. 222, "Puerto Rico became one of the first jurisdictions of the United States to harmonize its electoral legislation with Citizens United … ." It further states that the registration and reporting requirements imposed by Law No. 222 "ensures the freedom of expression of corporations, while providing to the electorate the information regarding the identity and source of the resources used for the political messages trying to have an influence on the same."

Although the plaintiffs here request that the defendants be enjoined from implementing the statutes in question prior to the upcoming November 6, 2012 elections, the Court finds that the balance of equities and the public interest cut against preliminary enjoinment. Granting the plaintiffs the emergency relief they now seek in effect leaves the government without the tools to implement its informational interest and thereby maintain an informed electorate. If disclosure is prevented, the people of the Commonwealth will be denied the ability to fully inform themselves of the circumstances surrounding this election. See Justice, 829 F.Supp.2d at page 520 (denying preliminary injunctive relief to informal discussion group seeking to enjoin enforcement of Mississippi's political committee and individual registration, reporting, and disclosure statutes as a violation of free speech and association rights where potential harm to state outweighed potential harm to group and injunction would not serve public interest in being fully informed on initiative).

Second, "the disruption that would be caused by the invalidation of [these] disclosure requirement[s], on the eve of the election, would be substantial." Worley v. Roberts, 749 F.Supp.2d 1321, 1325 (N.D.Fla. 2010). In fact, in Respect Maine PAC, 622 F.3d 13, the First Circuit Court of Appeals denied the plaintiffs' request for an emergency injunction enjoining the application of Maine's election laws considering, in part, the considerable harm an injunction would cause the candidates that had relied on the challenged statutes and the chaos that would ensue if laws were invalidated "in the crucial final weeks before an election." Id. at 16. In Respect Maine PAC, the plaintiffs had brought suit barely three months before the elections asserting facial and as-applied challenges to the constitutionality of certain provisions of Maine's election laws that set independent expenditure reporting requirements and limited contributions to candidates for governor. See id. Acknowledging that the

Civ. No. 12-1531 (PG)                                                    Page 14

issues raised by the challenges to Maine's laws were difficult and required careful analysis, see id. at 15, the First Circuit denied the emergency motion "[g]iven the potential harm to Maine and to all candidates if the emergency injunction were granted, and the public interest in maintaining the status quo during the period of the Court's deliberations," id. at 16.

   Finally, as previously noted, the court must also consider the fact that plaintiffs have waited until the eleventh hour to seek injunctive relief. It stemmed from the evidence submitted in the briefs and the hearing that the plaintiffs allowed at least four months (from February until July of 2012) to elapse before filing the present suit. Therefore, pursuant to the applicable law, the plaintiffs undue delay has afforded their claim little weight under the applicable balancing test. See Respect Maine PAC, 622 F.3d at 16 ("In determining the weight to be accorded to the appellants' claims, we also note that this "emergency" is largely one of their own making. The appellants, well aware of the requirements of the election laws, chose not to bring this suit until August 5, 2010, shortly before the November 2 elections.").

   Considering the circumstances surrounding this case are so similar to the ones in Respect Maine PAC, we must forcefully conclude that the balance of hardships and consideration of the public interest weigh against injunctive relief.

### *IV. CONCLUSION*

   Pursuant to the foregoing, the plaintiffs' Motion for Preliminary Injunction (Docket No. 10) and Supplemental Motion (Docket No. 20) are hereby **DENIED**. Pending before the court is thus the Plaintiffs' request for declaratory judgment.

  **IT IS SO ORDERED.**
  In San Juan, Puerto Rico, on September 27, 2012.

              S/ JUAN M. PEREZ-GIMENEZ

              JUAN M. PEREZ-GIMENEZ
              SENIOR U.S. DISTRICT JUDGE